[No. 12749. Department Two. December 29, 1915.]

T. H. McKAY, as Trustee etc., Appellant, v. B. J. GARMAN, Respondent.[1]

CORPORATIONS—STOCKHOLDERS — STOCK SUBSCRIPTIONS — PAYMENT IN MERCHANDISE—LIABILITY TO CREDITORS. Where but ten thousand dollars of the capital stock of a fifteen thousand dollar mercantile corporation was subscribed for, five thousand dollars being held as treasury stock, and the subscribed stock was paid for by the trans-fer of $14,600 worth of merchandise, $10,000 of which was applied on the stock subscriptions of the owner of the merchandise and the other subscribers, members of his family, who gave notes to him for the amount of their subscriptions, the stock subscribed for was fully paid for, and the stockholders are not liable to creditors as upon an unpaid stock subscription.

SAME—COMMENCING BUSINESS—STOCK NOT SUBSCRIBED—LIABIL-ITY OF OFFICERS. An officer and stockholder in a mercantile corpora-tion is not liable to creditors from the mere fact that the company transacted business before the whole of the capital was subscribed, in violation of law, in the absence of an express statute imposing such liability; since only the state can complain thereof.

Appeal from a judgment of the superior court for Che-halis county, Irwin, J., entered November 7, 1914, in favor of the defendant upon stipulated facts, in an action to recover on an unpaid stock subscription. Affirmed.

*Raymond J. McMillan* and *W. H. Abel*, for appellant.

*F. W. Loomis*, for respondent.

MORRIS, C. J.—Appellant seeks in this action to recover from respondent $4,602, upon the theory of liability growing

[1]Reported in 153 Pac. 1082.

out of an unpaid stock subscription. Being defeated in the lower court, he appeals.

The facts are stipulated, in substance, as follows:

"That for several years prior to July, 1908, B. J. Garman transacted business as a merchant in the city of Aberdeen, Chehalis county, Washington, where he now resides, and on the 16th day of July, 1908, B. J. Garman and Theresa Garman, his wife, W. D. Garman, brother of B. J. Garman, and Carrie I. Garman, his wife, made, executed and acknowledged articles of incorporation in triplicate, a copy of which is hereto annexed marked "Exhibit A" and made a part hereof, and which were filed in the office of the secretary of state of the state of Washington on the 21st day of July, 1908, and were thereafter duly filed in the office of the auditor of Chehalis county, Washington.

"The stock of merchandise of B. J. Garman at the time of the incorporation of the company was of the inventoried and reasonable value of $14,602. The only evidence of a subscription to the capital stock of the B. J. Garman Company is the following writing signed by B. J. Garman, Theresa Garman, Carrie I. Garman and W. D. Garman, respectively, which was entered upon the minute books of the company as follows:

"We the undersigned, subscribe to the number of shares of stock of the B. J. Garman Company as set opposite our names.

B. J. Garman.................................33 shares
Theresa Garman ..........................33 shares
Carrie I. Garmen.........................33 shares
W. D. Garman.............................. 1 share

"Upon the organization of the corporation B. J. Garman turned over to the corporation his stock of merchandise at the reasonable and inventoried value hereinbefore named as full payment of the $10,000 in stock subscribed for by himself and associates and received upon the books of the corporation a credit for the value of the stock in excess of $10,000, to wit: $4,602. There was no other money or property paid on account of the capital stock of the corporation. The said $4,-602 at various times and in various amounts was thereafter paid to the defendant from the funds of the corporation and applied by him to the payment of certain of his merchandise

indebtedness contracted by him before the corporation was formed. The balance of the unsubscribed capital stock amount to $5,000 by agreement of the incorporators was to be held as treasury stock.

"It is further stipulated and agreed that B. J. Garman if called as a witness on the part of the plaintiff in this proceeding would testify substantially as follows, which testimony may be considered by the court in determining this action, to wit:

"My name is B. J. Garman. I was president of the B. J. Garman Company, which was in business about two years prior to its bankruptcy and succeeded to me. I sold the B. J. Garman Company the stock of merchandise. I was in business seventeen years before I sold the stock of merchandise to the company. The capital stock of the company was $15,000, divided into 150 shares of $100 each. Fifty shares was treasury stock. I owned the whole stock of merchandise and I sold it to the company. The other stockholders in the corporation did not pay me in cash but gave me promissory notes for the amounts of their respective subscriptions. W. D. Garman gave me a note for $100 and Carrie I. Garman, his wife, a note for $3,300. These notes were not paid. I got Carrie I. Garman's stock back and surrendered her note. No interest was paid on the notes.

"I and my wife now own all the stock except one share, which my brother, W. D. Garman, owns. Q. How much in cash or merchandise was paid into the B. J. Garman Company in return for the stock of the par value of $10,000? A. I had $14,000 and some odd dollars worth of stock. Q. Merchandise? A. Yes, merchandise. Q. That was before the corporation was formed? A. Yes. Q. Then what happened? A. Of course $10,000 only was paid up; of course, the rest belonged to me. Q. Did you turn into the corporation that $14,000 worth of merchandise? A. No, I got credit for the $4,000."

Upon these facts the judgment must be sustained. The only subscription B. J. Garman made to the capital stock was for 33 shares, and his liability as a subscribing stockholder cannot be extended beyond that. The fact that he, at various times, received $4,602 from the assets of the corporation does not make him liable for its return upon the

theory that this amount represented a balance due upon an unpaid stock subscription.

Appellant lays much stress upon the testimony given by Garman that "I and my wife now own all the stock except one share which my brother W. D. Garman owns." This testimony must be read in the light of the admitted facts, and can be interpreted to mean nothing more than the stock subscribed for and issued in the first instance. The witness clearly had in mind the fact that fifty shares had not been subscribed for when issued, and was regarded as treasury stock.

Not being liable as a stockholder, is he liable because, as an officer of the corporation, he permitted it to commence business before all of its capital stock was subscribed? This question must be answered in the negative, in the absence of an express statute imposing such liability. It was so held in *American Radiator Co. v. Kinnear*, 56 Wash. 210, 105 Pac. 630, 35 L. R. A. (N. S.) 453, where the court, after a review of our material statutes, denies that the mere fact of transacting business before the whole capital stock is subscribed of itself establishes liability of a corporate officer for corporate debts. We there said:

"While there is some conflict of authority on this question, the weight of authority denies individual liability in such cases, holding that the state alone may complain of the violation of its laws."

The *Kinnear* case is amply supported by authority, and must be accepted as a controlling rule in this case.

The judgment is affirmed.

MOUNT, HOLCOMB, MAIN, and ELLIS, JJ., concur.